Welch, J.
The plaintiff asserts that she has the equitable title to the lands in controversy, and asks a release from those having the legal title. The first inquiry is, Where is the legal title ? Is it in McBain, or is it in Daniels and those claiming under him? In other words, Did McBain acquire a good title by the sheriff’s deed, made under an order of confirmation which was afterward reversed ? Or, if he did, Was *349 it defeated by the reversal before he made a legal conveyance to a third party ?
The statute in force at the time was that of 1841. (Swan’s Stat. 474). It provides (sec. 12), that “ no lands shall be sold for less than two thirds of the appraised and returned value of the inquest.” Sec. 15 provides that “ if the court shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has, in all respects, been made in conformity with the provisions of the statute, they shall direct the clerk to make an entry on the journal that the court are satisfied of the legality of such sale, and an order on the sheriff to make to the purchaser a deed.”
Before the passage of this act it had been held, that in order to support a deed by the sheriff, to a stranger, it was necessary to show a judgment, levy, and sale, and that a good title would pass without any appraisement. It was, perhaps, to guard against the evils resulting from this power of the sheriff, that the act of 1841 was passed. Since the date of that act it has been uniformly held that a confirmation is indispensable to the validity of the deed. Had the confirmation in this case remained in force, although upon its face erroneous — the sale being made for less than half of the appraised value of the land — and had the sale been made to a stranger, instead of a party, no doubt a good title would have passed. But the confirmation having been reversed and set aside becomes a nullity, and the case ’stands, at least as to parties, as though no confirmation had ever been made. The deed was to a party, the sale was irregular and illegal, and there was no valid order of confirmation or for a deed, and no valid conveyance to a third party by the purchaser, and it seems to us clear that no title passed by the deed. The rule, that a reversal of the judgment does not affect the title of the purchaser, does not aid the case, because that rule applies only to a purchase by a stranger. And there seems also good ground for the distinction made by the counsel, between the judgment and the confirmation — that the former goes to the general authority of the officer to make a sale, while the latter *350 is the evidence of the fact that the particular sale was legally made. The purchaser, when a stranger, has no control over the judgment, being no party to it; but he is a party to the sale, and ought to be held responsible, to some extent, for its regularity. It is enough here, however, to say that the purchaser was hot only a party to the sale, but also a party to the suit, and that no legal rights had been acquired by third parties before the reversal.
■ We are equally unable to see how the proceeding in partition could have the effect to impart any title to McBain. “ It is well settled,” says this court,. Tabler v. Wiseman et al., 2 Ohio St. Rep. 211, “ that such a proceeding does not decide title or create any new title. It merely dissolves the tenancy in common, and leaves the title as it was, except to locate such rights as the parties may have in distinct portions of the premises, and to extinguish it in others.”
It is claimed, hpwever, that Daniels, and those claiming under him, are estopped by the proceeding in partition, form setting up his title. It is sufficient answer to this claim to say, that Daniels had no actual notice of the partition, and was not in fact a party to it, otherwise than by publication of notice.
If, then, the legal title, is not in McBain, but in Daniels and those claiming under him, it remains to inquire whether Mrs. McBain, and the plaintiff as her. heir, have shown such a«right in the premises as entitles them to the aid of a court of equity, to compel the conveyance of the legal title by Daniels and his grantees.
The case can not be brought within the principle of Taylor v. Boyd, 3 Ohio Rep. 353, because Mrs. McBain admittedly had -no legal conveyance from her husband. She had, at most, only a contract for a conveyance. If the legal title was in her husband at the time of his attempted conveyance, it never passed to her. It is unnecessary, therefore, to decide what would have been her rights, had the conveyance from, her husband been a legal conveyance, or what, would have been *351 the effect of the reversal of the order of confirmation upon her title thus acquired.
We deem it also unnecesary to inquire what would be the rights of Mrs. McBain, as between her and Daniels, if she stood before us in the character of a purchaser for a valuable consideration without legal title. We think .the evidence fails to show that she was such purchaser^ Taking the whole testimony together, it seems to us that the attempted conveyance to her was voluntary. The money which was the alleged consideration of the intended conveyance, had become the property of the husband in virtue of his marital rights. The mortgage debt had become his by the marriage, and the mortgage was thereby extinguished. The purchase money of the Michigan farm had been reduced to his possession, and invested and used in the prosecution of his own business. The most you can say is, that he reduced the moneys and choses of his wife to possession, with the intention to compensate her therefor, by the conveyance of the land in controversy. There was no contract to that effect, and the conveyance was therefore voluntary on his part.
The legal title then being in Daniels and his grantees, who set up the defense, and not in McBain, who makes no defense, and the plaintiff’s mother having at most a mere equity, which she acquired as a volunteer, it seems clear that no conveyance should be decreed.
The petition is, therefore, dismissed with costs.
Brinkerhoef, C.J., and Scott, Day, and White, JJ., con curred.